TRAXLER, Chief Judge,
dissenting:
The majority affirms the dismissal of this case for lack of standing because it believes the contractual term “Virginia Law” includes Virginia statutes that are void for unconstitutionality. Because I believe that the phrase plainly does not encompass Virginia statutes that are invalid, and because the Supreme Court has construed nearly identical language to mean valid state law, I respectfully dissent.
I.
Virginia Code § 24.2-509(A) provides that “[t]he duly constituted authorities of the political party for the district, county, city, or town in which any other office is to be filled shall have the right to determine the method by which a party nomination for that office shall be made.”[1] This lawsuit involves constitutional challenges to a statutory exception to that rule that can deprive the political parties of the right to choose the nomination method for candidates for the Virginia General Assembly. That exception, commonly referred to as the Incumbent Protection Act (“the Act”), states in pertinent part, “Notwithstanding Section A, ... [a] party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party.” Va.Code § 24.2-509(B).
Central to this appeal is the Plan of Organization (the “Plan”) of the Republican Party of Virginia (the “Party”), which is a contract governing the Party’s members and operation. The 24th Senatorial District Republican Committee and its chairman (collectively, the “Committee”) brought this action in federal district court against the Virginia Department of Elections and various officials with the Virginia State Board of Elections (collectively, “the Defendants”), claiming that the Act violated its First Amendment right to free association by denying the Committee its right under the terms of the Plan to decide the nomination method for candidates seeking the Republican nomination for the Virginia General Assembly in its district. (The Committee attached the Plan as an exhibit to its complaint.) Senator Emmett Hanger, the incumbent, and Daniel Moxley, a Republican challenger, later intervened in the suit. Moxley asserted a claim alleging that the Act violated his Fourteenth Amendment right to equal protection under the law by allowing the incumbent Hanger to choose the nomination method.[2] The district court eventually dismissed the entire case for lack of standing. See Adams v. Alcorn, No. 5:15cv00012, 2015 WL 1524481 (W-D.Va. Apr. 2, 2015). The Committee and Moxley have appealed.
We review de novo a district court order dismissing for lack of standing. See Cooksey v. Futrell, 721 F.3d 226, 234 (4th Cir.2013). On review of a dismissal of a complaint, we “assume all well-pled facts to be true” and “draw all reasonable inferences in favor of the plaintiff.” Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 *635 F.3d 250, 253 (4th Cir.2009) (alteration & internal quotation marks omitted). We also “consider exhibit^ attached to the complaint”, Cooksey, 721 F.3d at 234 (internal quotation marks omitted).
Plaintiffs have “the bupden .of establishing standing” in. order to show that a district court possesses subject-matter jurisdiction, over a case. Miller v. Brown, 462, F.3d 312, 316 (4th Cir.2006). The doctrine of constitutional standing includes three components: “(1) the plaintiff must allege that' he or she suffered an actual or threatened injury that is not conjecturabor hypothetical;] (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury.”. Id.
A.
The injury the Committee alleges here is the deprivation pf the right to choose the nomination method for the General Assembly position at issue. And the injury In-tervenor Moxley alleges is that his opponent was given the unfair advantage of being allowed to choose the nominating method that would best ensure his renomination.[3] , Among other relief, the parties’ complaints each request a declaration that the Act violates the United States Constitution. The district court concluded that the constitutionality of the Act was irrelevant because the district court believed the Act was not the cause of these alleged injuries and the requested declaratory relief would do nothing to redress the alleged injuries in any event. See Adams, 2015 WL 1524481, at *7; see also id. at *4. That is so, the district .court reasoned, because the Party chose to incorporate the Act’s terms into its Plan, whether the Act was constitutional or not; thus, it was the Plan, and not the Act, that was the cause in fact of the alleged injuries. See id.; Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir.1997) (“Because the alleged injury is caused by a voluntary choice made by the Virginia Republióan Party and not the Open Primary Law, the plaintiffs have not established causation.”). It is the correctness of this reading of the Plan that is at the heart of the case before us.
The parties agree that the Plan should be interpreted as .a contract among the members of the Republican Party of Virginia (“the Party”) and construed according to ordinary contract principles. See Gottlieb v. Economy Stores, Inc., 199 Va. 848, 102 S.E.2d 345, 351 (1958). Because, the *636 interpretation of a written contract presents a question of lawr, we review the district court’s interpretation de novo. See Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 408, 418 (4th Cir.2004).
Under Virginia law, “[i]t is well established that, when the -terms of a contract are clear and unambiguous, a court must give them their plain meaning.” Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp., 263 Va. 169, 556 S.E.2d 769, 771 (2002). A court determines a contract’s plain meaning by giving its words “their usual, ordinary, and popular meaning.” Id. at 772. We therefore need to look at the Plan terms.
For most offices, the Plan unqualifiedly provides that particular Party committees will choose the nomination method. See Plan .at Art. Ill, § D(l)(b) (providing that the [“State Central Committee”] will decide the nomination method for candidates for statewide public office); Plan at Art. IV, § D(l)(a) (providing that the “District Committee” will decide the nomination method for candidates for' the United States House of Representatives); Plan 'at Art. VI, § D(l)(a) (providing that the “Unit Committee” will decide the nomination method for candidates for local and constitutional public offices). This choice reflects the fact that Virginia law gives political parties the unqualified right to make those decisions with regard to their candidates for those offices. See Va.Code § 24.2-509(A). The Plan provision concerning the General Assembly, however, has a special proviso that reflects the Act’s potential to deny the Party the right -to choose the nomination method. Accordingly, it states:
The Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, where permitted to do so under Virginia Law.
Plan at Aft. V, § D(l)(a) (emphasis added).
Central to these appeals is the question of how the emphasized language (the “qualifying language”) applies if the Act, which gives the nomination-method decision to an incumbent, is unconstitutional. The Committee argues the Act is unconstitutional and cannot be applied, thus giving the election decision to the Committee. The Defendants contend that “Virginia Law” includes the Act, even if it is unconstitutional.
In my view, the plain meaning of the Plan is the one that the Committee urges. Both the United States Supreme Court and the Supreme Court-of-Virginia have held that the law of a particular state includes the United States Constitution, such that an unconstitutional Virginia statute is no law at all. See Howlett ex rel. Howlett v. Rose, 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (“[T]he Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature.”); Ex parte Siebold, 100 U.S. 371, 376, 25 L.Ed. 717 (1879) (“An unconstitutional law is void, and is as no law.”); Marburg v. Madison, 5 U.S. 137, 180, 1 Cranch 137, 2 L.Ed. 60 (1803) (“[A] law repugnant to the constitution is void.”); Spiak v. Seay, 185 Va. 710, 40 S.E.2d 250, 251 (1946) (“The provision of the Constitution of the’United States on interstate extradition, together with the Acts of Congress on the subject, are a part of the supreme law of the land and therefore a part of the law of each State.”). For that reason, the ordinary and natural meaning, of “Virginia Law” does not include Virginia statutes that are void because they violate the U.S. Constitution.
Indeed, only days after we heard oral argument in the present case, the Su *637 preme Court held that language nearly identical to that now before us unambiguously conveyed that very meaning.. See DIRECTV, Inc. v. Imburgia, — U.S. -, 136 S.Ct. 463, 469, 193 L.Ed.2d 365 (2015). In that case, DIRECTV entered into a service contract with its customers that included an arbitration provision that stated that it would be unenforceable if the “law of your state” made waivers of class arbitration unenforceable. Id. at 466 (internal quotation marks omitted). Another section of the contract provided that the arbitration provision “shall be governed by the Federal Arbitration Act.” Id. (internal quotation marks omitted). Two of DIRECTV’S customers brought suit in 2008 against DIRECTV in a California state court seeking damages for early terrqi-nation fees that the customers alleged violated California state law. See id. Invoking the arbitration provision, DIRECTV requested arbitration. See id The state trial court denied the request. See id.
DIRECTV appealed to the California Court of Appeal, which affirmed. See id at 466-67. Under that court’s analysis, the enforceability of the arbitration provision turned on the effect of a rule of California' state law that resulted from a 2005 California Supreme Court decision, Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005), and which was embodied in California statutory law as well (the “Discover Bank rule”).[4] See DIRECTV, 136 S.Ct. at 466-67. Under the Discover Bank rule, the arbitration provision would have been unenforceable as á matter of California state law. See id. However, in 2011, the United States Supreme Court held that the Discover Bank rule was preempted and invalidated by the Federal Arbitration Act (“FAA”) because the rule “st[ood] as an obstacle to the accomplishment and execution of the' full purposes and objectives of Congress” that the FAA embodied. AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 352, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).
Although it recognized that Concepcion had invalidated the Discover Bank rule, see DIRECTV, 136 S.Ct. at 467, the California Court of Appeal nonetheless believed that DIRECTV’S entitlement to arbitration depended on the meaning of the contractual phrase “law of your state,” see id. at 466. Concluding that the parties intended that phrase to mean “the law of California including the Discover Bank rule and irrespective of that rule’s invalidation in Concepcion,” id. at 468, the court affirmed the lower court’s denial of DIRECTV’S request to enforce the arbitration agreement, see id at 467. And the California Supreme Court denied discretionary review. See id.
The United States Supreme Court then granted DIRECTV’S petition for certiorari and reversed. The Court assumed that the California Court of Appeal’s decision was correct as a matter of state contract law, but nonetheless considered whether that state law was consistent with the FAA. See id at 468. The Supreme Court concluded that in'ruling that “law of yoür state” included state laws that were invalidated by federal law, the California court did not “place[ ] arbitration contracts on equal footing with all other contracts.” *638 DIRECTV, 136 S.Ct. at 468-69 (internal quotation marks omitted). The Supreme Court offered many reasons for its conclusion, most of which related to the fact that the California court’s interpretation could not be justified in light of generally applicable law.[5] See id. at 468-71.
The Court began by considering the ordinary meaning of the phrase “law of your state.” The Court concluded that the natural meaning is “valid state law.” Id. at 469. In fact, the Court determined that it would not even be reasonable to read “law of your state” to include state law that was invalid under the Supremacy Clause. See id. And the Court noted that it had not found any contract case from any state “that interprets similar language to refer to state laws authoritatively held to be invalid.” Id.; see id. at 470 (“[W]e can find no similar case interpreting the words ‘law of your state’ to include invalid state laws.”).
The Court also noted that construing “law of your state” to exclude law that was invalidated after the formation of the contract would be consistent with applicable principles of contract interpretation. See id. at 469. The Court particularly cited California caselaw holding that plea agreements, which are construed according to normal contract principles, are “‘deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws.’ ” Id. (quoting Doe v. Harris, 57 Cal.4th 64, 158 Cal.Rptr.3d 290, 302 P.3d 598, 601-02 (2013)). And the Court referred to the fact that “judicial construction of a statute ordinarily applies retroactively.” Id. (citing Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).
In my view, the reasons cited by the Supreme Court in DIRECTV also demonstrate that the phrase “Virginia Law” in the Plan before us here cannot be construed to include invalid Virginia statutes. Under the Supreme Court’s reasoning, the ordinary meaning of the phrase “Virginia Law” is “valid [Virginia] law,” and a réad-ing that included invalid Virginia statutes would not even be reasonable. Id. (emphasis in original). Additionally, the contract and statutory principles that the DIRECTV Court relied on provide further support this interpretation, just as they supported the DIRECTV Court’s similar interpretation.[6] See id.
Because I would construe “Virginia Law” to encompass only valid Virginia law, I would read “Virginia Law” — and Virginia Code § 24.2-509(A) in particular — to “permit[ ]” the Committee to choose the nomination method in the event that § 24.2-509(B) is unconstitutional. See Va.Code § 24.2-509(A) (“The duly constituted .authorities of the political party for the district, county, city, or town in which any other office is to be filled shall have the right to determine the method by which a party nomination for that office shall be made.”). And because I would read the Plan as authorizing the Committee to choose the nominating method in the event that § 24.2-509(B) is unconstitutional, I do not agree with the district court’s conclu *639 sion that it is the Plan itself that is the cause of the parties’ alleged injuries and an obstacle preventing redressability.[7] Accordingly, I would hold that the district court erred in concluding that the Committee and Moxley failed to establish standing under our Marshall decision.
Bu
Defendants contend that, even if the Committee and Moxley would otherwise have established standing, they failed to do so because Virginia could have enacted legislation requiring a particular‘nomination -method without running afoul of the Constitution. See Appellees’ brief at 29-32 (citing Miller v. Brown, 503 F.3d 360, 368 (4th Cir.2007)). However, even if Defendants are correct that Virginia could have constitutionally enacted such legislation, this argument at most goes to the merits of the claims asserted in this case; it does not relate to standing. See Arizona State Legislature v. Arizona Indep. Redistricting Comm’n, — U.S. —, 135 S.Ct. 2652, 2663-65, 192 L.Ed.2d 704 (2015) (Arizona legislature challenged statute on basis that it deprived , legislature of its constitutional authority to initiate redistricting; although Court concluded that legislature did not have the authority it asserted, that point related only to the merits of, the legislature’s claim, not to its standing to assert the claim).
The Committee alleged injuries from operation of the Act in that it prevents it from selecting the nomination method for the General Assembly position at issue here. Moxley alleged injuries from the Act in that it was allowing his opponent to choose the nominating mechanism that he believed would best ensure his reelection. Both sought to have the Act declared void so that the Committee’s designation of a convention would be upheld and their injuries could be avoided. These allegations were sufficient to establish that the dispute would “be resolved- ... in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action,” as the standing doctrine requires. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). I therefore believe the district court erred in dismissing this case for lack of standing.[8]
*640 II.
In sum, I would reverse the district court’s-judgment dismissing the complaints for lack of subject-matter jurisdiction. I respectfully dissent from the majority’s contrary decision.

. Senator Hanger chose a primary, whereas the Committee favored a convention.

. Moxley’s alleged interest in depriving his opponent of that advantage, and thereby increasing his own prospects for winning the nomination, is sufficient to establish his standing. See Texas Democratic Party, v. Benkiser, 459 F.3d 582, 586-87 & n. 4 (5th Cir.2006) (holding that plaintiff political party had standing to sue to prevent opposing party from removing a candidate from the ballot and- replacing him with a new candidate in part because obtaining that relief would improve the chance of winning for the party's candidate);' Schulz v. Williams, 44 F.3d 48, 53 (2d Cir.1994) (holding,, based on "[t]he well-established concept of competitors’ standing,” that political party chairman had standing to challenge placement of another party’s gubernatorial candidate on the ballot because that placement could reduce the chances that the plaintiff’s party would receive the number of votes it needed to retain its place on the ballot); Owen v. Mulligan, 640 F.2d 1130, 1132-33 (9th Cir.1981) (holding that candidate had standing to sue to compel Postal Service to cancel a bulk-mail permit being used by a political opponent to mail political literature insofar as the reduced-cost mailings put the plaintiff candidate at a competitive disadvantage). Cf. Bostic v. Schaefer, 760 F.3d 352, 371 (4th Cir.2014) ("[W]hen the.government erects a barrier that mákes it more difficult for members of one group to obtain a benefit than it is for members of another group, the injury in fact is the denial of equal treatment resulting from the imposition of the barrier.” (alterations & internal quotation marks omitted)).

. Discover Bank held "that a waiver of class arbitration, in a consumer contract of adhesion that predictably involves small amounts of damages and meets certain other criteria” that were not contested in DIRECTV was "unconscionable under California law and should not be “enforced.” DIRECTV, Inc. v. Imburgia, — U.S. -, 136 S.Ct. 463, 466, 193 L.Ed.2d 365 (2015) (alteration & internal quotation marks omitted). The applicable California statutes referenced above were sections 1751 and 1781(a) of California’s Consumers Legal Remedies Act. See id. at 466-67.

. The Court also noted that particular language the Court of Appeal used suggested that the court might have intended its holding to be limited to the arbitration context. See id. at 470.

. Similar to the California caselaw cited by the Supreme Court in DIRECTV, see id. at 469, the Supreme Court of Virginia has held, in the context of interpreting a plea agreement, that "contracts are deemed to implicitly incorporate the existing law and the reserved power of the state to amend the law or enact additional laws for the public welfare,” Smith v. Commonwealth, 286 Va. 52, 743 S.E.2d 146, 150 (2013).

. The fact that no court has determined prior to the initiation of this case that § 24.2-509(B) is unconstitutional has no bearing on standing. Under DIRECTV's reasoning, "Virginia Law” excludes invalid Virginia statutes, including unconstitutional statutes whose unconstitutionality had not yet been recognized by any court at the time the Plan was adopted. See DIRECTV, 136 S.Ct. at 466-71 (holding, that the "law of your state” excluded state laws that, after the formation of the contract at issue — and after the initiation of the lawsuit at issue — were held by the Supreme Court to be preempted by the FAA). Consequently, if the Committee and Moxley are correct on the merits of their claims that § 24.2-509(B) is unconstitutional, then they are also correct, under the reasoning' of DIRECTV, that "Virginia Law” does not include § 24.2-509(B) and that the Plan authorizes the Committee to, choose the nomination method. ,

. The fact that Senator Hanger defeated Mox-ley in the primary long ago does not moot this appeal because the issues presented fit into the "capable of repetition, yet evading review” exception to the mootness doctrine. See FEC v. Wisc. Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). Although this exception applies only if the issue is capable of repetition in regard to the same plaintiff, see Stop Reckless Econ. Instability Caused by Democrats v. FEC, 814 F.3d 221, 229-32 (4th Cir.2016), there is a reasonable expectation that each of the plaintiffs and intervenor Moxley will be subject to the same action again in future elections, see North Carolina Right to Life Comm. Fund for Indep. Political Expenditures v. Leake, 524 *640 F.3d 427, 435 (4th Cir.2008) (holding that constitutional , challenges to system of public financing for judicial elections, brought by two political committees and a candidate, were not mooted by the election even though neither the political committees nor the candidate had specifically alleged an intent to participate in future election cycles; concluding that "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles”; rejecting "the argument that an ex-candidate’s claims may be ‘capable of repetition yet evading review’ only if the ex-candidate specifically alleges an intent to run again in a future election”).