No. 15-0948 – *Salem International University, LLC, and John Luotto, President v. Taylor Bates, et al.*

WORKMAN, Justice, concurring:

FILED

**November 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

The outcome today is manifestly unfair and I submit that the nursing students involved in this case deserve better. Nevertheless, when I consider the parties' arguments against the backdrop of a formidable pro-arbitration policy expressed by Congress and repeatedly upheld by the United States Supreme Court, I am left with no alternative but to join in the majority opinion.

> No one denies that lower courts must follow this Court's holding in *Concepcion*.[1] The fact that *Concepcion* was a closely divided case, resulting in a decision from which four Justices dissented, has no bearing on that undisputed obligation. Lower court judges are certainly free to note their disagreement with a decision of this Court. But the "Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source." *Howlett v. Rose*, 496 U.S. 356, 371, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); cf. *Khan v. State Oil Co.*, 93 F.3d 1358, 1363-1364 (C.A.7 1996), vacated, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it. U.S. Const., Art. VI, cl. 2 ("[T]he Judges in every State shall be bound" by "the Laws of the United States").

---

[1] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (upholding class action waiver contained in arbitration clause in consumer contract and noting "our cases place it beyond dispute that the FAA was designed to promote arbitration.").

1

*DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 468 (2015) (footnote added); *see also, Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 85 (2010) (Stevens, J., dissenting) (stating *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), "and its progeny allow a court to pluck from a potentially invalid *contract* a potentially valid *arbitration agreement*.").

I write separately to emphasize that by allowing Salem International University, LLC ("Salem University") to reap the benefit of the arbitration clause ignores not just the hugely unequal bargaining power of the parties, but also the nursing students' reasonable expectations at the time this alleged contract was formed.[2] *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (stating it is appropriate to construe terms against drafter where other party had no reason to anticipate drafter's result); *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 262 ("[C]ontract[s] . . . are to be read in the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the [parties] thereby contracting." (quoting *Rocca v. Thompson*, 223 U.S. 317, 331-332 (1912)).

---

[2]Although these issues are not before this Court, the nursing students set forth compelling arguments that the arbitration clause is both procedurally and substantively unconscionable.

Moreover, the opportunity for the nursing students to seek class relief is of particular importance to the enforcement of West Virginia laws protecting consumers because it provides a mechanism for the spreading of costs. The class action device allows plaintiffs with individually small claims the opportunity for relief that would otherwise not be economically feasible, allowing them to collectively share the otherwise exorbitant costs of bringing and maintaining the lawsuit. "In many cases, the availability of class action relief is a *sine qua non* to permit the adequate vindication of consumer rights." *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265, 278 (2002). "The class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186 (1974) (Douglas, J., dissenting, in part).

In light of *Concepcion*, however, I join the majority opinion grudgingly but note Justice Ginsburg's sagacious observation that the arbitration decisions rendered by the United States Supreme Court over the last decade "have predictably resulted in the deprivation of consumers' rights to seek redress for losses, and, turning the coin, they have insulated powerful economic interests from liability for violations of consumer-protection laws." *DirectTV*, 136 S.Ct. at 477, (Ginsburg, J., dissenting).

Salem University failed miserably in managing its nursing program but that did not stop it from making a convincing sales pitch to these students that they would get the training and degree required to secure high paying jobs as nurses upon graduation.

3

Salem University worked hard to sign up prospective nursing students by assuring them the program was in sound shape even though the university knew it was in the process of losing its accreditation. Regrettably, these nursing students and their classmates were left holding the bag with no degree, no nursing careers, and student loans that are collecting interest and weighing them down financially.

These nursing students, negatively impacted by Salem University's conduct, filed the putative class action complaint against the university in the Circuit Court of Harrison County alleging violations of the West Virginia Consumer Credit Protection Act, negligence, breach of contract, breach of duty of good faith and fair dealing, and conversion of personal property. Were it not for the binding precedent of the United States Supreme Court discussed by the majority, I would have found that the students were entitled to litigate these disputes in our State courts.