# IN THE SUPREME COURT OF TEXAS

═══════════

No. 15-0687

═══════════

ETC Marketing, Ltd., Petitioner,

v.

Harris County Appraisal District, Respondent

═══════════════════════════════════════════

On Petition for Review from the
Court of Appeals for the First District of Texas

═══════════════════════════════════════════

Justice Brown, joined by Justice Willett, concurring.

The "dormant Commerce Clause" of the United States Constitution is an implication—a "judge-invented rule"[1] that "has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application."[2] ETC relies on this judicial invention to avoid a tax levied on 33 billion cubic feet of natural gas it has stored in Harris County.

As it must, the Court subjects ETC's contention to *Complete Auto Transit, Inc. v. Brady*'s[3] multi-factor test. And, as it's had to do before, the Court strives to reconcile that test with the "in transit" line of cases, which the United States Supreme Court has yet to overrule.[4] Ably synthesizing

---

[1] *Comptroller of the Treasury of Maryland v. Wynne*, 135 S.Ct. 1787, 1807–08 (2015) (Scalia, J., dissenting). "The fundamental problem with our negative Commerce Clause cases is that the Constitution does not contain a negative Commerce Clause. It contains only a Commerce Clause." *Id.*

[2] *Id.* at 1811.

[3] 430 U.S. 274 (1977).

[4] Ante at ___; *see also Diamond Shamrock Refining and Mktg. Co. v. Nueces Cty. Appraisal Dist.*, 876 S.W.2d 298, 302 (Tex. 1994).

the "bestiary of ad hoc tests and ad hoc exceptions"[5] that lurks throughout the federal judiciary's dormant Commerce Clause jurisprudence, the Court concludes that Harris County's tax does not violate the Constitution. I join its opinion in full. But the inane process the Court patiently endures—to arrive at what I believe is an obvious conclusion—exposes *Complete Auto* as "eminently unhelpful."[6]

The Supremacy Clause obliges us to apply *Complete Auto* and do our best to reconcile it with other U.S. Supreme Court precedent.[7] Nevertheless, the "ultimate touchstone of constitutionality is the Constitution itself and not what [the Supreme Court says] about it."[8] The text of the Constitution, interpreted in light of its original meaning, should prevail over slavish devotion to judge-made, form-over-substance, multi-factor tests. We mustn't miss the constitutional forest for the judge-planted trees.[9] Whatever result *Complete Auto* compels, it should jibe with a plain reading of the Constitution.

---

[5] *Wynne*, 135 S.Ct. at 1809 (Scalia, J., dissenting).

[6] *See Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 201 (1995) (Scalia, J., joined by Thomas, J., concurring in judgment only). The late Justice Scalia wrote of this "so-called 'four-part test'": "I look forward to the day when *Complete Auto* will take its rightful place . . . among the other useless and discarded tools of our negative Commerce Clause jurisprudence." *Id.*

[7] U.S. Const. Art. VI, cl. 2; *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("Lower court judges are certainly free to note their disagreement with a decision of this Court. But the 'Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source.'") (quoting *Howlett v. Rose*, 496 U.S. 356, 371 (1990)).

[8] *Graves v. New York*, 306 U.S. 466, 491–92 (1939).

[9] *See Morrison v. Olson*, 487 U.S. 654, 712, 719 (1988) (Scalia, J., dissenting) (stating preference to "look to the text of the Constitution" over application of an "ad hoc, standardless" multi-factor test.

The Commerce Clause, like so much of the Constitution, is not complicated: "The Congress shall have Power . . . to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."[10] It reflects "a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation."[11]

The Founders wrote the Commerce Clause as a positive grant of power to Congress. But the Supreme Court has read into it "a further, negative command"[12]—the so-called dormant Commerce Clause. This implied directive "precludes States from 'discriminat[ing] between transactions on the basis of some interstate element'"[13] and targets "state or municipal laws whose object is local economic protectionism."[14] And as the dormant Commerce Clause prohibits "certain state taxation even when Congress has failed to legislate on the subject,"[15] its enforcement falls to the courts rather than Congress.

_____

[10] U.S. CONST. Art. I, Sec. 8, cl. 3.

[11] *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979) (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 533–54 (1949)).

[12] *Jefferson Lines*, 514 U.S. at 179.

[13] *Wynne*, 135 S.Ct. at 1794 (quoting *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 332 n.12 (1977)) (alterations in original).

[14] *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) (citing THE FEDERALIST No. 22).

[15] *Jefferson Lines*, 514 U.S. at 179.

3

But enforcing the dormant Commerce Clause's negative command does not require the courts "to perform a conventional judicial function, like interpreting a legal text, discerning a legal tradition, or even applying a stable body of precedents."[16] Instead, it impels courts "to balance the needs of commerce against the needs of state governments."[17] And though "[t]hat is a task for legislators, not judges,"[18] it is also a situation beyond *this* Court's authority to change.

Once the U.S. Supreme Court assumed for courts the duty to enforce the dormant Commerce Clause, it created methods for fulfilling that duty. The *Complete Auto* test is one such method—a means to evaluate whether a local tax touches on the concerns implicated by the dormant Commerce Clause; that is, whether a local tax impermissibly discriminates against interstate commerce. But courts are not obliged to approach that question solely through the laborious and mechanical application of a judicial test.[19] The correct result in this case—that the dormant Commerce Clause is not implicated—is fairly obvious. We do not need a "nexus" to figure it out.

Nothing in this case hints that Harris County discriminates between intrastate and interstate natural gas. Or that it favors locally produced or marketed gas over out-of-state gas. Nothing about the tax works to the advantage of Harris County over other jurisdictions. And nothing indicates Harris County wouldn't tax similar gas the same way regardless of who owned it, where it came from, or where it would eventually be sold. The "object" of this tax is not "economic protectionism";

---

[16] *Wynne*, 135 S.Ct. at 1810 (Scalia, J., dissenting).

[17] *Id.*

[18] *Id.*

[19] *Jefferson Lines*, 514 U.S. at 201 (Scalia, J., joined by Thomas, J., concurring in the judgment only).

4

it is not a tax that will "excite those jealousies and retaliatory measures the Constitution was designed to prevent."[20] It's just a tax on personal property. Nothing points to any objective other than raising revenue. Notwithstanding the result of some nebulous, multi-factored, judge-created test, I see no discriminatory intent or effect.[21]

The Court reaches the same answer by applying the *Complete Auto* test. Again, I do not begrudge the Court's work; had I written the majority opinion, I would be obliged to do the same. We should take care, however, to ensure that applying *Complete Auto*, and other judicially created constitutional tests, serves to elucidate rather than obscure the Constitution. With the rationale of the dormant Commerce Clause in mind, we must view the "substantial nexus" prong of the *Complete Auto* test as merely a means to clarify when a taxing entity has acted in a protectionist or discriminatory fashion.

It is hard to imagine how a "substantial nexus" could not exist between Harris County and 33 billion cubic feet of natural gas underneath its ground.[22] The question becomes tricky only

---

[20] *See Clarkstown*, 511 U.S. at 390.

[21] "[O]ur negative Commerce Clause jurisprudence has taken us well beyond the invalidation of obviously discriminatory taxes on interstate commerce. We have used the Clause to make policy-laden judgments that we are ill equipped and arguably unauthorized to make. In so doing, we have developed multifactor tests in order to assess the perceived 'effect' any particular state tax or regulation has on interstate commerce. And in an unabashedly legislative manner, we have balanced that 'effect' against the perceived interests of the taxing or regulating State . . . ." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 618–19 (1997) (Thomas, J., dissenting) (internal citations omitted).

[22] *See In re Assessment of Personal Prop. Taxes Against Mo. Gas Energy*, 234 P.3d 938, 955 (Okla. 2008) (explaining that because the in-transit test's "subjective factors are inconclusive, the nexus issue is better decided on the basis of the objective fact that [the pipeline company] stored gas on behalf of [the taxpayer] and that a certain amount of it was held [in storage] at all times during the tax years in question"); *In re Property Valuation Appeals of Various Applicants*, 313 P.3d 789, 799 (Kan. 2013) ("There is axiomatically a substantial nexus between Kansas and the gas stored in this state.").

because we must wrestle with exactly what a "nexus" is while we strain to reconcile older and newer precedents. In this environment, with the Constitution's text relegated to the back seat, ETC is free to argue that the U.S. Supreme Court's older in-transit cases, grafted onto the substantial-nexus framework, mandate that gas stored indefinitely and without a purchaser is in the stream of commerce. And we must follow these machinations with the utmost seriousness.

Indeed, the U.S. Supreme Court certainly has held that, in some cases, temporary storage—when necessary to a product's journey to its destination—does not remove the product from interstate commerce.[23] And I readily agree that safely and consistently satisfying consumer demand requires the temporary storage of massive amounts of natural gas. But the natural-gas industry is not unique in this regard. Countless businesses are compelled to stockpile inventory to meet fluctuating demand. These businesses know they cannot instantaneously produce and safely transport their products the moment a customer is ready to buy. That's why businesses maintain a surplus of product and build warehouses and tanks to store it—to meet demand at peak buying times. Yet the vast majority of surplus inventory enjoys no constitutional exemption from local property taxes. The science behind maintaining an interstate natural-gas pipeline network is fascinating, but it's not a constitutional basis for preferential treatment.

ETC times the market by buying natural gas when price and demand are low, waiting an indefinite period of time, and selling when demand and price are higher. As it stockpiles inventory, ETC does not know when it will sell or who or where its customers will be. In the meantime, ETC's

---

[23] *See, e.g.*, *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 101 (1929).

gas "has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that [ETC] may dispose of it either within the state, or for shipment elsewhere, as [its] interest dictates."[24] While the gas sits there, local taxes are the cost of doing business.

\* \* \*

The tedious application of a vexing, multi-factored, judicial test is not tantamount to constitutional analysis. The Supremacy Clause obliges us to apply *Complete Auto*; the Court dutifully has done so. But a judicial test is merely a means to an end. And the end is sound interpretation of the Constitution's plain words and original meaning. The dormant Commerce Clause itself is already enough of a deviation from the Constitution's text. We need not compound the sin by relying exclusively on an imprecise, fabricated test to implement a made-up doctrine. We can objectively answer the question of constitutionality without resorting to such "interpretive jiggery-pokery."[25] It's plain as day that the tax at issue doesn't "discriminate between transactions on the basis of some interstate element."[26] So Harris County may tax the gas.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: April 28, 2017

---

[24] *Minnesota v. Blasius*, 290 U.S. 1, 10 (1933).

[25] *King v. Burwell*, 135 S.Ct. 2480, 2500 (2015) (Scalia, J., dissenting).

[26] *Boston Stock Exchange*, 429 U.S. at 332 n.12.