NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3357
_____

DARCY SMITH, PH.D.,
                              Appellant
v.

CYNTHIA BORSELLA LINDEMANN, ESQ.,
an attorney at law of the State of New Jersey;
WEINSTEIN, SNYDER, LINDEMANN & SARNO;
STEVEN URBINATO, ESQ., an attorney at law
of the State of New Jersey; STARR, GERN,
DAVISON & RUBIN, P.C.; MARC A. CALELLO, ESQ.;
ALFONSE A. DEMEO

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-10-cv-03319)
District Judge: Honorable Kevin McNulty

_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2017

Before: AMBRO, KRAUSE, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: September 21, 2017)

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

Darcy Smith, Ph.D., hired and fired a string of four lawyers in connection with her divorce. She later sued in the District of New Jersey all four attorneys and their respective law firms for malpractice. Three settled, but one attorney, Marc A. Calello, asked the District Court to enforce an arbitration provision in his representation agreement with Smith. The District Court obliged, staying Smith's action and compelling arbitration.

Smith contends that the provision is unenforceable because New Jersey law does not permit the arbitration of malpractice claims against attorneys brought by their former clients, and, even if New Jersey law did permit arbitration of her claims, this provision fails because it does not specifically use the word "malpractice." Accordingly, she asks us to reverse the District Court or, in the alternative, to certify to the Supreme Court of New Jersey the question whether arbitration provisions like the one in her agreement are enforceable. The decision whether to certify a question of law to the Supreme Court of New Jersey is left to our discretion. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974).

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Smith's agreement with Calello contains the following provision, which unambiguously requires arbitration of any quarrels between them:

> Arbitration of Differences Between the Client and the Law Firm.
> Should any difference[], disagreement, or dispute between you and the Law Firm arise as to its representation of you, or on account of any other matter, you agree to submit such disagreements in binding arbitration.

It goes on to specify the applicable arbitration procedures and concludes by advising that

> [s]igning of this Agreement will be deemed your consent to the methods of alternative dispute resolution set forth in this Section, and constitutes a waiver on your part and on the part of the Law Firm to have such disputes resolved by a court which might include having the matter determined by a jury.

"The [Federal Arbitration Act ("FAA")] federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate[.]'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32 (1983)).  Thus, as the Supreme Court has repeatedly reaffirmed, "'[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'" *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (quoting *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 341 (2011)) (alteration in original).

Yet an arbitration provision may be set aside "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration

or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). To determine whether grounds for revoking the contract containing the arbitration provision exist, "[a] federal court must generally look to the relevant state law on the formation of contracts[.]" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

Smith makes two arguments why the arbitration provision cannot be enforced. Neither is convincing.

First, she contends that New Jersey law prohibits the enforcement of arbitration provisions by attorneys facing malpractice claims brought by former clients. Even were there support for her view of New Jersey law (Smith concedes no case in New Jersey specifically bars the arbitration of attorney-malpractice claims), the FAA would preempt it. *See Marmet Health Care Ctr.*, 565 U.S. at 533.[1] Thus Smith's first argument fails.

Second, Smith argues that the arbitration provision cannot be enforced because its inclusion in the representation agreement violated the New Jersey Rules of Professional Conduct and thereby invalidated the entire agreement. *See Jacob v. Norris, McLaughlin & Marcus*, 607 A.2d 142, 146 (N.J. 1992) ("Contracts that violate the [Rules of Professional Conduct] violate public policy, and courts must deem them

---

[1] Smith places particular emphasis on a concurrence in *Kamaratos v. Palias* asserting that "a retainer agreement that contains a commercial arbitration clause which waives the client's right to access the courts to resolve disputes arising out of the attorney/client relationship must be viewed as inherently unenforceable and against public policy." 821 A.2d 531, 540 (N.J. Super. Ct. App. Div. 2003) (Fuentes, J. concurring). This position is clearly inconsistent with the U.S. Supreme Court's later holding in *Concepcion,* 563 U.S. at 341, that state law may not prohibit the arbitration of any particular type of claim.

unenforceable."). The Rules of Professional Conduct require an attorney to advise his client of the implications of any retainer agreement. *See Cohen v. Radio-Elecs. Officers Union, Dist. 3, NMEBA*, 679 A.2d 1188, 1196 (N.J. 1996); *see also* N.J. Rules Prof'l Conduct R. 1.4(c) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). And while "[i]t is permissible under the [American Bar Association's] Model Rules [of Professional Conduct] to include in a retainer agreement with a client a provision that requires the binding arbitration of . . . malpractice claims," the client must be "fully apprised of the advantages and disadvantages of arbitration" and "give[] her informed consent" to the arbitration provision. ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002). Because the arbitration provision at issue here did not specifically include the word "malpractice," Smith contends she could not have given her informed consent to the agreement unless Calello orally warned her that she would have to arbitrate any malpractice claims against him. And there is no evidence that he gave such a warning.

The Supreme Court has held that the FAA requires courts to put arbitration agreements "on equal footing with all other contracts" and that they may not interpret state law differently in the context of arbitration. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 470 (2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). So, to the extent Smith seeks a more searching review of the advice attorneys provide new clients when an agreement to arbitrate is at issue, her argument is foreclosed by the FAA. *See id.* We need not decide that question, however, because she

5

fails to explain why a written or oral warning that explicitly uses the word "malpractice" is necessary as a matter of New Jersey law.

The arbitration provision before us is straightforward: "[A]ny difference[], disagreement, or dispute between [Smith and Calello] as to [his] representation of [her]" shall be submitted to "binding arbitration." J.A. 25. True, the New Jersey Supreme Court has held in a different context that "[t]he absence of *any* language in [an] arbitration provision that [a] plaintiff [i]s waiving her statutory right to seek relief in a court of law renders the provision unenforceable." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 309 (N.J. 2014) (emphasis in original). But the provision here makes plain that arbitration means giving up the right to have a dispute resolved by a judge and jury. J.A. 25 (agreement to arbitration constitutes a "waiver . . . to have such disputes resolved by a court which might include having the matter determined by a jury").

Despite her contention that she did not give informed consent to the arbitration provision, Smith does not argue that it is too narrow to cover malpractice claims. Although she contends Calello should have used the word "malpractice" orally or in the agreement itself, she never claims not to have known malpractice claims would fall within the provision's definition of "any difference[], disagreement, or dispute between [her] and [Calello] . . . as to [his] representation of [her.]" J.A. 46. Nor does she claim to have been surprised that her agreement to arbitrate meant giving up the right to go to court.

Indeed, Smith used *the same clause* to her advantage in a related matter. Following his termination, Calello filed a civil action against Smith to collect unpaid

6

fees. When she didn't appear, Calello obtained a default judgment against her. Smith, appearing *pro se*, then asked the court to vacate the judgment on the ground that Calello was bound to arbitrate, rather than litigate, any claims against her, and the court granted her request.

Smith notes that "[a]n arbitration provision—like any comparable contractual provision that provides for the surrendering of a constitutional or statutory right—must be sufficiently clear to a reasonable consumer." *Atalese*, 99 A.3d at 309. Although she claims her attorney failed to advise her of the arbitration provision's meaning, its language is unambiguous. And Smith never says what wasn't clear to her. Indeed, if the record suggests anything, it's that she was aware of the arbitration provision's meaning and consequences.

*　*　*　*　*

A New Jersey rule prohibiting the inclusion of an arbitration provision in an attorney-client representation agreement (whether inferred by this Court or the New Jersey Supreme Court) would be preempted by the FAA, and Smith fails to state what, if anything, made the arbitration provision so unclear as to preclude its enforcement. For these reasons, we affirm the District Court's order compelling arbitration and decline Smith's request to certify a question of law to the Supreme Court of New Jersey.