Justice THOMAS, concurring.
As our precedents make clear and the Court acknowledges, the Federal Arbitration Act (FAA) requires federal courts to enforce arbitration agreements "just as they would ordinary contracts: in accordance with their terms." Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 87, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (THOMAS, J., concurring in judgment). Federal courts must therefore apply "background principles of state contract law" when evaluating arbitration agreements. Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 630, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ; Perry v. Thomas , 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). "In this endeavor, 'as with any other contract, the parties' intentions control.' " Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp. , 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. , 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ). Thus, where an agreement is silent as to class arbitration, a court may not infer from that silence that the parties agreed to arbitrate on a class basis. 559 U.S. at 687, 130 S.Ct. 1758.
Here, the arbitration agreement between Varela and Lamps Plus is silent as to class arbitration. If anything, the agreement suggests that the parties contemplated only bilateral arbitration.* App. to Pet. for Cert. 24a (waiving "any right I may have to file a lawsuit or other civil action or proceeding relating to my employment with the Company" (emphasis added)); ibid. ("The Company and I mutually consent to the resolution by arbitration of all claims ... that I may have against the Company" (emphasis added)); id. , at 24a-25a ("Specifically, the Company and I mutually consent to the resolution by arbitration of all claims that may hereafter arise in connection with my employment" (emphasis added)). This agreement provides no "contractual basis" for concluding that the parties agreed to class arbitration, *1420 Stolt-Nielsen , supra , at 684, 130 S.Ct. 1758, and I would therefore reverse on that basis.
The Court instead evaluates whether California's contra proferentem rule, as applied here, " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." Ante, at ---- (quoting AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 352, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ). I remain skeptical of this Court's implied pre-emption precedents, see Wyeth v. Levine , 555 U.S. 555, 582-604, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (opinion concurring in judgment), but I join the opinion of the Court because it correctly applies our FAA precedents, see Epic Systems Corp. v. Lewis , 584 U.S. ----, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018) ; Concepcion , supra .
Justice GINSBURG, with whom Justice BREYER and Justice SOTOMAYOR join, dissenting.
Joining Justice KAGAN's dissenting opinion in full, I write separately to emphasize once again how treacherously the Court has strayed from the principle that "arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp. , 559 U.S. 662, 681, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (internal quotation marks omitted).
Congress enacted the Federal Arbitration Act (FAA) in 1925 "to enable merchants of roughly equal bargaining power to enter into binding agreements to arbitrate commercial disputes." Epic Systems Corp. v. Lewis , 584 U.S. ----, ----, 138 S.Ct. 1612, 1643, 200 L.Ed.2d 889 (2018) (GINSBURG, J., dissenting) (emphasis in original). The Act was not designed to govern contracts "in which one of the parties characteristically has little bargaining power." Prima Paint Corp. v. Flood & Conklin Mfg. Co. , 388 U.S. 395, 403, n. 9, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ; see Gilmer v. Interstate/Johnson Lane Corp. , 500 U.S. 20, 42, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Stevens, J., dissenting) ("I doubt that any legislator who voted for [the FAA] expected it to apply ... to form contracts between parties of unequal bargaining power, or to the arbitration of disputes arising out of the employment relationship."); Miller, Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure, 88 N. Y. U. L. Rev. 286, 323 (2013) (The FAA was "enacted in 1925 with the seemingly limited purpose of overcoming the then-existing 'judicial hostility' to the arbitration of contract disputes between businesses.").
The Court has relied on the FAA, not simply to overcome once-prevalent judicial resistance to enforcement of arbitration disputes between businesses. In relatively recent years, it has routinely deployed the law to deny to employees and consumers "effective relief against powerful economic entities." DIRECTV , Inc. v. Imburgia , 577 U.S. ----, ----, 136 S.Ct. 463, 476, 193 L.Ed.2d 365 (2015) (GINSBURG, J., dissenting). Arbitration clauses, the Court has decreed, may preclude judicial remedies even when submission to arbitration is made a take-it-or-leave-it condition of employment or is imposed on a consumer given no genuine choice in the matter. See Epic , 584 U.S., at ---- - ----, 138 S.Ct., at 1644 (GINSBURG, J., dissenting) (surveying "court decisions expansively interpreting" the FAA); Circuit City Stores, Inc. v. Adams , 532 U.S. 105, 132, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (Stevens, J., dissenting) ("There is little doubt that the Court's interpretation of the [FAA] has given it a scope far beyond the expectations of the Congress that enacted it."); Miller, supra , at 324 (describing as "extraordinary" "judicial extension of the [FAA] to a vast array of consumer contracts *1421 ... characterized by their adhesive nature and by the individual's complete lack of bargaining power"). Propelled by the Court's decisions, mandatory arbitration clauses in employment and consumer contracts have proliferated. See, e.g. , Economic Policy Institute, A. Colvin, The Growing Use of Mandatory Arbitration 2, 4-6 (Apr. 6, 2018) (mandatory arbitration imposed by private-sector employers on nonunionized employees notably increased between 1995 and 2017), online at https://www.epi.org/files/pdf/144131.pdf (all Internet materials as last visited Apr. 22, 2019); Consumer Financial Protection Bureau, Arbitration Study § 1.4.1 (Mar. 2015) ("Tens of millions of consumers use consumer financial products or services that are subject to ... arbitration clauses."), online at https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf.
Piling Pelion on Ossa, the Court has hobbled the capacity of employees and consumers to band together in a judicial or arbitral forum. See Epic , 584 U.S., at ----, n. 12, 138 S.Ct., at 1644, n. 12 (GINSBURG, J., dissenting) (noting Court decisions enforcing class-action waivers imposed by the party in command, who wants no collective proceedings). The Court has pursued this course even though "neither the history nor present practice suggests that class arbitration is fundamentally incompatible with arbitration itself." AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 362, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (BREYER, J., dissenting).
Employees and consumers forced to arbitrate solo face severe impediments to the "vindication of their rights." Stolt-Nielsen , 559 U.S. at 699, 130 S.Ct. 1758 (GINSBURG, J., dissenting). "Expenses entailed in mounting individual claims will often far outweigh potential recoveries." Epic , 584 U.S., at ----, 138 S.Ct., at 1647 (GINSBURG, J., dissenting); see American Express Co. v. Italian Colors Restaurant , 570 U.S. 228, 246, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (KAGAN, J., dissenting) ("[The defendant] has put [the plaintiff] to this choice: Spend way, way, way more money than your claim is worth, or relinquish your ... rights."); Concepcion , 563 U.S. at 365, 131 S.Ct. 1740 (BREYER, J., dissenting) ("What rational lawyer would have signed on to represent the [plaintiffs] for the possibility of fees stemming from a $ 30.22 [individual] claim?"); Resnik, Revising Our "Common Intellectual Heritage": Federal and State Courts in Our Federal System, 91 Notre Dame L. Rev. 1831, 1888 (2016) ("Few individuals can afford to pursue small value claims; mandating single-file arbitration serves as a means of erasing rights, rather than enabling their 'effective vindication.' ").
Today's decision underscores the irony of invoking "the first principle" that "arbitration is strictly a matter of consent," ante , at ---- (internal quotation marks and alterations omitted), to justify imposing individual arbitration on employees who surely would not choose to proceed solo. Respondent Frank Varela sought redress for negligence by his employer leading to a data breach affecting 1,300 employees. See Complaint in No. 5:16-cv-00577 (CD Cal.), Doc. 1, ¶¶1, 59. The widely experienced neglect he identified cries out for collective treatment. Blocking Varela's path to concerted action, the Court aims to ensure the authenticity of consent to class procedures in arbitration. Ante , at ---- - ----. Shut from the Court's sight is the "Hobson's choice" employees face: "accept arbitration on their employer's terms or give up their jobs." Epic , 584 U.S., at ----, n. 2, 138 S.Ct., at 1636, n. 2 (GINSBURG, J., dissenting); see Circuit City , 532 U.S. at 139, 121 S.Ct. 1302 (Souter, J., dissenting) (employees often *1422 "lack the bargaining power to resist an arbitration clause if their prospective employers insist on one").
Recent developments outside the judicial arena ameliorate some of the harm this Court's decisions have occasioned. Some companies have ceased requiring employees to arbitrate sexual harassment claims, see McGregor, Firms May Follow Tech Giants on Forced Arbitration, Washington Post, Nov. 13, 2018, p. A15, col. 1, or have extended their no-forced-arbitration policy to a broader range of claims, see Wakabayashi, Google Scraps Forced Arbitration Policy, N. Y. Times, Feb. 22, 2019, p. B5, col. 4. And some States have endeavored to safeguard employees' opportunities to bring sexual harassment suits in court. See, e.g. , N. Y. Civ. Prac. Law Ann. § 7515 (West 2019) (rendering unenforceable certain mandatory arbitration clauses covering sexual harassment claims). These developments are sanguine, for "[p]lainly, it would not comport with the congressional objectives behind a statute seeking to enforce civil rights ... to allow the very forces that had practiced discrimination to contract away the right to enforce civil rights in the courts." Barrentine v. Arkansas-Best Freight System, Inc. , 450 U.S. 728, 750, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Burger, C.J., dissenting).
Notwithstanding recent steps to counter the Court's current jurisprudence, mandatory individual arbitration continues to thwart "effective access to justice" for those encountering diverse violations of their legal rights. DIRECTV , 577 U.S., at ----, 136 S.Ct., at 471 (GINSBURG, J., dissenting). The Court, paradoxically reciting the mantra that "[c]onsent is essential," ante , at ----, has facilitated companies' efforts to deny employees and consumers the "important right" to sue in court, and to do so collectively, by inserting solo-arbitration-only clauses that parties lacking bargaining clout cannot remove. CompuCredit Corp. v. Greenwood , 565 U.S. 95, 115, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012) (GINSBURG, J., dissenting). When companies can "muffl[e] grievance[s] in the cloakroom of arbitration," Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware , 414 U.S. 117, 136, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), the result is inevitable: curtailed enforcement of laws "designed to advance the well-being of [the] vulnerable." Epic , 584 U.S., at ----, 138 S.Ct., at 1646 (GINSBURG, J., dissenting). "Congressional correction of the Court's elevation of the FAA over" the rights of employees and consumers "to act in concert" remains "urgently in order." Id. , at ----, 138 S.Ct., at 1633.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co. , 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.